**E-Filed 12/2/05**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRISTINA JOHNSON,<br><br>               Plaintiff,<br><br>    v.<br><br>P.W. SUPERMARKET, INC., et al.,<br><br>              Defendants. | Case Number C 04-05155-JF<br><br>ORDER[1] GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING REMAINING CLAIM TO STATE COURT<br><br>[Docket No.40] |

      P.W. Supermarkets, Inc. ("PW"), Marta Engen ("Engen"), and Stephanie Rivero, a.k.a. Stephanie Beltran ("Rivero") (collectively "Defendants") move for summary judgment, or in the alternative, partial summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiff Christina Johnson ("Johnson") opposes the motion. Having considered the briefs and the arguments of counsel at the hearing on October 7, 2005, the Court will grant the motion in part for the reasons set forth below.

---

[1] This disposition is not designated for publication and may not be cited.

Case No. C 04-05155-JF
ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING REMAINING CLAIM TO STATE COURT
(JFEX1)

## I. BACKGROUND

On or about May 28, 2000, PW hired Johnson, a Caucasian woman, as a deli bakery courtesy clerk and assigned her to work at store number ten in Gilroy, California. Johnson Dep. at 24-25. During the course of her employment, Johnson was a member of the United Food & Commercial Workers International Union, AFL-CIO, Local 428 ("Union"). FAC at 1. Johnson's employment with PW therefore was governed by a Collective Bargaining Agreement ("CBA") entered into by the Union, PW, and PW's employees. *Id*. at 8. Johnson contends that her employment also was governed by contractual obligations solely between PW and Johnson, as evidenced by PW's written policies, oral representations made to Johnson, and the parties' course of conduct. *Id*. at 6. Defendants dispute this contention, claiming that Johnson's deposition testimony confirms that the CBA is the only document that governed her employment. Def. Memorandum at 9.

Johnson alleges that on several occasions, Engen, a co-worker and bakery clerk, made racially discriminatory and harassing comments toward her. Johnson Dep. at 104-05. In February 2001, Engen allegedly made comments about Johnson's family and skin color, stating that "[Johnson's] kids' father should be with a Hispanic woman" and that Johnson's "pussy pink color lipstick" didn't look good on her "white colored face." *Id*. at 105. Johnson further alleges that in February 2002, Engen commented on the size of her pants, referring to them as "hoochie pants." *Id*. at 95. As a result of this perceived harassment, Johnson spoke to her supervisor, Juanna, and requested that Engen be asked to stop making such comments. *Id*. at 101-02. In addition, Johnson faxed a letter to the Union describing the incidents of perceived harassment and corresponding dates. *Id*. at 102. In response, representatives from the Union visited the store, met with Johnson and Engen, and instructed them to "get along and go back to work." *Id*. at 103. Despite this visit, Johnson maintains that Engen continued to direct comments at her and, in response, Johnson continued to discuss the matter with her supervisor. *Id*. at 103-04. Defendants contend that Johnson did not make further complaints about Engen or any other co-worker after February 2002. Def. Memorandum at 2.

2

Case No. C 04-05155-JF
ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING REMAINING CLAIM TO STATE COURT
(JFEX1)

A.     **Johnson's Termination**

On July 2, 2002, Johnson's two children and their father, Frank Anchondo ("Anchondo"), visited her in the bakery department. Johnson Dep. at 37. Anchondo was concerned because one of the children had a fever. *Id.* Johnson testified that she examined the child, gave her a cup of water and a napkin, and told Anchondo that she would be home after 8:00 p.m. to fix chicken soup. *Id.* Before Anchondo and the children left the bakery area, Rivero approached and advised Johnson that non-employees were not permitted in the bakery work area because insurance concerns.[2] *Id.* at 38. Johnson replied, "I understand, no problem." *Id.* Johnson testified that her daughter then reached from the shopping cart "as if she wanted to have a cookie," but Johnson instructed her not to do so. *Id.* After Anchondo and the children left the store, Rivero paged Johnson over the intercom. *Id.* at 39. Rivero then "irately" accused Johnson of allowing her daughter to steal a cookie from the bakery. *Id.* Johnson told her to "forget it" and hung up the phone. *Id.* A few minutes later, Rivero approached Johnson in the bakery department and instructed her to clock out. *Id.* Johnson was subsequently informed that she had been fired.

Defendants contend that Johnson's daughter reached into the bakery display case, took a cookie, and left the store without paying. Beltran Dec., ¶¶ 6, 8. While discussing the matter over the telephone with Johnson, Rivero claims that Johnson began to "argue" and informed Rivero that she "didn't know what [she] was fucking talking about." *Id.*, ¶ 11. After failing to reach Johnson over the intercom following the initial telephone conversation, Rivero walked to the bakery department, whereupon Johnson accused her of "always trying to get her in trouble." *Id.*, ¶¶ 12, 13. Rivero then instructed Johnson to leave the store because of her inappropriate conduct. *Id.*, ¶ 14. As a result of Johnson's alleged insubordinate and inappropriate conduct toward Rivero, PW terminated Johnson's employment on the same date. Stigers Dec., ¶ 2.

///
///

---

[2] The parties dispute whether Anchondo and the children were behind the deli counter during their visit. *See* Johnson Dep. at 44; Beltran Dec., ¶ 5.

3

Case No. C 04-05155-JF
ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING REMAINING CLAIM TO STATE COURT
(JFEX1)

### B. Union Grievance Proceeding

Following Johnson's termination, the Union contacted Michael Stigers, Director of Operations at PW, and requested a Board of Adjustment grievance hearing in order to evaluate the merits of Johnson's termination. Stigers Dec., ¶ 3, Ex. A. The hearing was set for November 13, 2002. Johnson Dep., Ex. 3. Johnson appeared at the grievance hearing with her attorney, Steven Springer, with whom she initially had consulted in July 2002. *Id*. at 66, 70. However, the Union informed Johnson that she would not be permitted to enter the proceeding with an attorney, citing the terms of the CBA. *Id*. at 71. Johnson decided not to attend the proceeding and her grievance was withdrawn. *Id*. at 72. As a result, Johnson's termination was upheld. *Id*., Ex. 6.

### C. Department of Fair Employment and Housing Complaint

On March 5, 2003, Johnson completed a California Department of Fair Employment and Housing ("DFEH") complaint with the assistance of her attorney, Mr. Springer, but she did not submit the complaint to the DFEH on the same day. *Id*. at 77. Johnson claims not to remember the date on which she sent the complaint to the DFEH. *Id*. at 79. According to DFEH records, the complaint was filed by Johnson on October 21, 2003. *Id*., Ex. 7. DFEH records also indicate that on September 10, 2003, Mr. Springer faxed a copy of Johnson's Pre-Complaint Questionnaire to the DFEH and requested investigation or issuance of a right to sue letter. *Id*., Ex. D at 14-17. Mr. Springer states that he initially sent the Pre-Complaint Questionnaire and request for issuance of a right to sue letter to the DFEH on May 20, 2003. Springer Dec., ¶ 4.

### D. Procedural History

On October 21, 2004, Johnson filed suit in the Santa Clara Superior Court against PW, Engen, Rivero, the Union, and two Union representatives. Johnson asssserted claims for: (1) discrimination; (2) wrongful termination in violation of public policy; (3) breach of contract; (4) breach of the covenant of good faith and fair dealing; (5) intentional infliction of emotional distress; and (6) negligent infliction of emotional distress. On December 6, 2004, Defendants removed the action to this Court, invoking federal jurisdiction under Section 301 of the Labor

4

Management Relations Act ("LMRA"), 29 U.S.C. § 185.[3] On March 15, 2005, the Court dismissed Johnson's claims against the two Union representatives without leave to amend and granted Johnson leave to amend certain claims asserted against the Union. In response, Johnson filed a First Amended Complaint ("FAC") on April 4, 2005. On June 15, 2005, the Court granted the Union's second motion to dismiss in its entirety, resulting in the dismissal of the Union from the action. The remaining Defendants — PW, Engen, and Rivero — now move for summary judgment.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, (9th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id*. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49;

---

[3] "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

5

Case No. C 04-05155-JF
ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING REMAINING CLAIM TO STATE COURT
(JFEX1)

*Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

The standard applied to a motion seeking partial summary judgment is identical to the standard applied to a motion seeking summary judgment of the entire case. *Urantia Foundation v. Maaherra*, 895 F. Supp. 1335, 1335 (D. Ariz. 1995).

### III. DISCUSSION

**A.      First Claim for Relief: Discrimination in Violation of Cal. Gov. Code § 12940.**

Johnson asserts a claim for racial discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900 *et seq.*, against PW, Engen, and Rivero. FAC, ¶¶ 10-20. FEHA declares that discrimination in employment on specified grounds, including race, color, national origin or ancestry, is unlawful and against public policy. Cal. Gov. Code § 12920. In order to pursue a civil cause of action under FEHA, an individual first must follow certain procedural steps set forth in the statute. "Under FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the [DFEH] and must obtain from the [DFEH] a notice of right to sue in order to be entitled to file a civil action in court." *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996). The DFEH complaint must be filed within one year of the date on which the last alleged unlawful practice occurred. Cal. Gov. Code § 12960(d).

In the instant action, the most recent alleged unlawful employment practice occurred on July 2, 2002, when PW terminated Johnson. FAC, ¶ 13j. DFEH records indicate that the Department did not receive Johnson's administrative complaint until October 21, 2003 — more than three months beyond the statutory deadline. Johnson Dep., Ex. 7. Nevertheless, Johnson argues that the date on which the DFEH complaint was received remains a contested material fact. The Court finds that Johnson has failed to present evidence sufficient to support her contention that the DFEH complaint was filed prior to the expiration of the statutory deadline. For instance, Johnson testified that she "[could not] recall honestly the right month" in which she sent the complaint to the DFEH. Johnson Dep. at 79. Mr. Springer maintains that he drafted a letter requesting information regarding the status of Johnson's DFEH complaint and instructed

6

Case No. C 04-05155-JF
ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING REMAINING CLAIM TO STATE COURT
(JFEX1)

his staff to mail a copy of the letter and Pre-Complaint Questionnaire to the DFEH on May 20, 2003. Springer Dec., ¶ 4. However, DFEH records indicate that the letter and accompanying questionnaire were not received until they were sent via fax on October 10, 2003. Johnson Dep., Ex. D at 14-17. In any event, even if the Court were to assume that the letter and questionnaire were received by the DFEH in May 2003, these documents are insufficient to constitute a valid DFEH complaint. *See Cole v. Antelope Valley Union High School Dist.*, 47 Cal. App. 4th 1505, 1515 (1996) ("The statute does not authorize *any alternative* to the requirement of the filing of a 'verified complaint in writing.'") (emphasis added). Indeed, there is no evidence that would permit a jury to determine that Johnson filed a formal DFEH complaint within the required statutory period. Accordingly, the Court concludes that Johnson failed to exhaust her administrative remedies and thus is precluded from pursuing a civil action under FEHA against PW, Engen, and Rivero on her claim for racial discrimination.[4] Nor does the record support Johnson's request to apply the doctrine of equitable tolling in this instance.

Although Johnson failed to exhaust her administrative remedies under FEHA, she nonetheless may assert state law claims against Defendants based upon their alleged discriminatory conduct. "FEHA is meant to supplement, not supplant or be supplanted by, existing anti-discrimination remedies, in order to give employees the maximum opportunity to vindicate their civil rights against discrimination." *Rojo v. Kliger*, 52 Cal. 3d 65, 74-75 (1990); *see also* Cal. Gov. Code § 12993. "[E]xhaustion is not required before filing a civil action for damages alleging nonstatutory causes of action." *Rojo*, 52 Cal. 3d at 88. Accordingly, the Court will proceed to evaluate Defendants' motion for summary judgment as it pertains to Johnson's remaining state law claims.

///

///

---

[4] Even if Johnson had filed her DFEH complaint within the one year statutory period, Engen and Rivero are not subject to liability under FEHA. "[I]ndividuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts." *Reno v. Baird*, 18 Cal. 4th 640, 663 (1998).

7

Case No. C 04-05155-JF
ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING REMAINING CLAIM TO STATE COURT
(JFEX1)

B.     **Second Claim for Relief: Wrongful Termination in Violation of Public Policy**

Johnson next asserts a claim for wrongful termination in violation of public policy against PW, Engen, and Rivero. FAC, ¶¶ 21-26. Johnson alleges specifically that she was "constructively terminated by [PW] because of her race, national origin, or ancestry" in violation of public policy set forth in Article I, Section 8 of the California Constitution and California Government Code Sections 12920 and 12921.[5] FAC, ¶¶ 23-26. Contrary to Johnson's allegation that she was constructively terminated, the record indicates that Johnson was *actually* terminated by PW on July 2, 2002. Stigers Dec., ¶ 2. There is no evidence to suggest that Engen, Johnson's co-worker, possessed the authority to terminate Johnson or was involved in PW's decision to terminate Johnson. Similarly, the evidence indicates that although Rivero was involved in a dispute with Johnson on the date of her termination, Rivero was not in a position to terminate Johnson's employment. In her declaration, Rivero suggests that she did not make the ultimate decision to terminate Johnson, stating: "I believe *PW's motivation* for terminating Johnson was based upon its legitimate concern about her insubordinate conduct . . . ." Rivero Dec., ¶ 19 (emphasis added). Without clear evidence that Engen and Rivero possessed the authority to terminate Johnson, they cannot be held liable for their alleged discriminatory actions under a theory of wrongful termination. Accordingly, the Court will grant summary judgment in favor of Engen and Rivero on this claim.

With respect to PW, the Court concludes that there are disputed issues of material fact that preclude summary judgment. PW contends that it legitimately terminated Johnson because she engaged in insubordinate and disrespectful conduct toward Rivero on July 2, 2002. Stigers

---

[5] In order to support a wrongful termination in violation of public policy claim, the policy must be grounded in either constitutional or statutory provisions. *Stevenson v. Superior Court*, 16 Cal. 4th 880, 889-90 (1997). In the instant action, the public policy set forth in FEHA against racial discrimination in employment is not applicable to supervisory employees and co-workers such as Engen and Rivero. *See Reno v. Baird*, 18 Cal. 4th 640, 664-65 (1998). However, the public policy set forth in Article I, Section 8 of the California Constitution is not so limited. Accordingly, Johnson may rely upon the California Constitution as the basis for her wrongful termination claim against Defendants.

8

Case No. C 04-05155-JF
ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING REMAINING CLAIM TO STATE COURT
(JFEX1)

Dec., ¶ 2. However, Johnson disputes the essential facts relating to her alleged insubordinate conduct. In her deposition, Johnson stated that she did not yell or curse at Rivero. Johnson Dep. at 50. Moreover, Johnson and Anchondo state that their daughter did not touch or take a cookie during the July 2, 2002 visit to the store. Johnson Dec., ¶ 3e; Anchondo Dec., ¶ 6. Thus, although Johnson concedes that insubordination was PW's stated rationale for her termination, she does not admit that she engaged in insubordinate conduct. Johnson Dec., ¶ 5. Given this discrepancy, a reasonable jury could accept Johnson's version of the facts and conclude that she actually had been terminated in violation of public policy. The fact that Johnson was terminated approximately four months after her most recent complaint to the Union regarding Engen's conduct does not as a matter of law preclude a jury from finding that Johnson was wrongfully terminated, given that Johnson's allegation of retaliation is merely a component of her claim for discrimination in violation of public policy. *See* FAC, ¶¶ 21-26. Accordingly, the Court will deny PW's motion for summary judgment on this claim.

**C.     Third and Fourth Claims for Relief: Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**

Johnson asserts further claims for breach of contract and breach of the covenant of good faith and fair dealing against PW. FAC, ¶¶ 27-45. Johnson alleges specifically that PW breached an implied contract with Johnson that had been established by PW's written employment policies and the parties' course of conduct. It is undisputed that as a Union employee, the terms and conditions of Johnson's employment were set forth in a CBA. Stigers Dec., ¶ 4. PW contends that the CBA is the only contract that governed Johnson's employment with PW, and that Johnson's state law claims for breach of contract and breach of the covenant of good faith and fair dealing thus are preempted by the LMRA. *See* 19 U.S.C. § 185. The Court agrees. As an initial matter, Johnson's deposition testimony is inconsistent with her allegation in the FAC that the parties had formed an implied contract:

> Q. Now, other than the union agreement . . . is there any other document that you're aware of that you think had anything to do with your employment setting forth the terms or conditions of employment?

9

Case No. C 04-05155-JF
ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING REMAINING CLAIM TO STATE COURT
(JFEX1)

1  A. That I had received or — I'm sorry?

2  Q. Either that you received or that you didn't receive of which you are aware.

3  A. I'm not aware, no. Piece of paper? What are you meaning?

4  Q. Anything.

5  A. No.

Johnson Dep. at 192. Furthermore, Johnson has failed to present evidence that PW maintained or published company policies that could form the basis of an implied contract. Without such evidence, a reasonable jury could not conclude that Johnson's employment was governed by any contract other than the CBA.

Given the Court's determination that the CBA was the only contract between Johnson and PW, Johnson's breach of contract and breach of the covenant of good faith and fair dealing claims are preempted by the LMRA. Where a plaintiff alleges breach of contract, "preemption [under the LMRA] is required if his claims can be resolved only by referring to the terms of the [collective bargaining] agreement." *Cook v. Lindsay Olive Grower*, 911 F.2d 233, 237 (9th Cir. 1990). Likewise, "[w]here the collective bargaining agreement contains terms governing job security, [the] breach of the covenant of good faith and fair dealing cause of action is preempted."[6] *Id*. at 238-39. Accordingly, the Court will grant summary judgment in favor of PW as to Johnson's third and fourth claims for relief.

**D.   Fifth and Sixth Claims for Relief: Intentional and Negligent Infliction of Emotional Distress**

Johnson finally alleges that PW negligently or intentionally inflicted emotional distress upon her by engaging in a pattern and practice of discrimination based on race, failing to properly respond to her complaints of discrimination, retaliating against her for reporting the discriminatory actions of other employees, and terminating her employment because of her race.

---

[6] In the instant action, the CBA contains terms and conditions governing job security in the following sections: Section 3 (probation, termination, and work performance), Section 4 (seniority), and Section 18 (adjustment and arbitration of disputes). Stigler Dec., Ex. B.

10

Case No. C 04-05155-JF
ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING REMAINING CLAIM TO STATE COURT
(JFEX1)

1  FAC, ¶¶ 47-48, 53-55.  In order to state a claim for intentional or negligent infliction of
2  emotional distress under California law, Johnson must show that (1) PW engaged in extreme and
3  outrageous conduct with the intent of causing, or reckless disregard of the probability of causing,
4  emotional distress, (2) Johnson actually suffered emotional distress, and (3) PW's outrageous
5  conduct proximately caused her emotional distress.  *See Newberry v. Pac. Racing Ass'n*, 854
6  F.2d 1142, 1150 (9th Cir. 1998).

   In the FAC, Johnson alleges conclusorily that she "has suffered and continues to suffer
   pain, discomfort, anxiety, humiliation and emotional distress . . . ."  FAC, ¶¶ 52, 59.  However, in
   response to PW's motion for summary judgment, Johnson fails to offer any evidence indicating
   that she actually suffered emotional distress as a direct result of PW's alleged discriminatory
   conduct.  "When the nonmoving party has the burden of proof at trial, the moving party need
   only point out 'that there is an absence of evidence to support the nonmoving party's case.'"
   *Devereaux v. Abbey*, 263 F.3d 1070, (9th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S.
   317, 325 (1986)).  Given Johnson's failure to submit any evidence in support of her intentional or
   negligent infliction of emotional distress claims, the Court will grant summary judgment in favor
   of PW.

**E.     Remand**

   In light of the foregoing analysis and conclusions, Johnson now maintains only a single
   claim against PW for wrongful termination in violation of public policy.  In the exercise of its
   discretion, the Court declines to retain supplemental jurisdiction under 28 U.S.C. § 1367 over
   this state law claim.  Accordingly, this claim will be remanded to the Santa Clara Superior Court.

///
///
///
///
///
///
///

Case No. C 04-05155-JF
ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING
REMAINING CLAIM TO STATE COURT
(JFEX1)

# IV. ORDER

IT IS HEREBY ORDERED THAT:

(1)  Engen and Rivero's motion for summary judgment as to Plaintiff's first and second claims for relief is GRANTED.

(2)  PW's motion for summary judgment as to Plaintiff's first, third, fourth, fifth, and sixth claims for relief is GRANTED.

(3)  PW's motion for summary judgment as to Plaintiff's second claim for relief is DENIED. This claim is REMANDED to the Santa Clara Superior Court for further proceedings.

DATED: December 2, 2005

                                                    /s/ electronic signature authorized
                                                    JEREMY FOGEL
                                                      United States District Judge

Case No. C 04-05155-JF
ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING REMAINING CLAIM TO STATE COURT
(JFEX1)

1  This Order has been served upon the following persons:

3  <u>Counsel for Plaintiff</u>
4  sespringer@earthlink.net
5  info@springerlawfirm.com

7  <u>Counsel for Defendants</u>
8  mbruno@gordonrees.com
9  nharvat@gordonrees.com
10  tom@pahl-gosselin.com
11  ssandoval@pahl-gosselin.com

Case No. C 04-05155-JF
ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING REMAINING CLAIM TO STATE COURT
(JFEX1)